T.C. Memo. 1997-335

UNITED STATES TAX COURT

JOHN JOSEPH MONTANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4283-96.                    Filed July 24, 1997.

On the facts, <u>Held</u>: R's disallowance of P's 1993
Schedule C "returns and allowances" in the amount of $45,243
sustained; P's self-employment tax and related deductions
redetermined; and R's determination that there is an
accuracy-related penalty due under sec. 6662(a), I.R.C.,
sustained.

John Joseph Montano, pro se.

<u>Roberta D. Repasy</u>, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Respondent determined a deficiency in petitioner's Federal income tax for 1993 in the amount of $11,129, and an accuracy-related penalty under section 6662(a) for 1993 in the amount of $2,226.  All section references are to sections of the Internal Revenue Code in effect for 1993, and all Rule references are to the Tax Court Rules of Practice and Procedure.

There are two issues for decision.  The first is whether petitioner is entitled to reduce Schedule C gross receipts or sales by claimed returns and allowances in the amount of $45,243. (Respondent's disallowance of this amount resulted in a self-employment tax liability and a corresponding deduction of one-half the amount thereof, both of which are reflected in the $11,129 income tax deficiency determined by respondent, but which must be recomputed in accordance with discussion infra.)  The second issue for decision is whether petitioner is liable for the accuracy-related penalty under section 6662(a).

Some of the facts were stipulated and are so found. Petitioner resided in Corona Del Mar, California, at the time he filed his petition.

In the early 1970s petitioner was engaged in manufacturing and selling filament tape and pressure-sensitive labels. In the late 1970s, petitioner obtained a contract with the General Services Administration (GSA) under which he sold approximately $600,000 worth of filament tape to the Federal Government. The contract was canceled by GSA because the tape failed to meet contract specifications, and the defective tape was returned to petitioner. Thereafter, petitioner no longer manufactured filament tape and did not purchase any additional products for resale.

Petitioner stored the defective tape in a shed in his wife's backyard. Petitioner was married in 1949, but he and his wife have lived apart for at least 20 years. Since 1979, petitioner has attempted to sell the tape, which petitioner describes as "about $500,000 worth of material", but without success. Petitioner owed the Small Business Administration (SBA) $500,000 on a loan made in connection with his efforts in the filament tape business, and the SBA confiscated petitioner's equipment and other business assets in the early 1980s to cover some of the loans it had made to petitioner.

In 1992, petitioner placed 115,375 rolls of filament tape on consignment with Advanced Coating.  In this connection, on August 26, 1992, petitioner issued an invoice to Advanced Coating showing the sale price of the tape as $80,762.50 for 115,375 rolls of filament tape, at 70 cents per roll.  On his 1992 return, petitioner reported no income from the consignment to Advanced Coating.

In 1993, Advanced Coating returned all of this tape as defective.  On May 12, 1993, petitioner gave Advanced Coating a credit memo for $45,243 indicating that approximately 64,633 rolls had been returned.  On his 1993 return petitioner claimed $45,243 in returns and allowances in connection with the returned tape previously consigned to Advanced Coatings.  Since Advanced Coating could use none of the tape, the invoice and credit memo, taken together, reflect a substantial discrepancy in the amount of tape consigned and the amount returned.  Petitioner explained this discrepancy as "Well, only because it was just a book entry. It didn't really make any difference."

Petitioner paid no Federal income tax for the years 1991 through 1994.  The following table reflects petitioner's wage

income and claimed losses relating to his filament tape
endeavors:

| Year | Wage Income | Sch. C Gross Rec. | Sch. C Returns & Allowances | Sch. C Cost of Goods Sold/ Expenses[1] | Sch. C Loss |
|------|-------------|-------------------|-----------------------------|-----------------------------------------|-------------|
| 1991 | $38,468 | $ 4,297 | $37,683 | – 0 – | ($33,386) |
| 1992 | 37,192 | 12,162 | 29,478 | $19,330 | ( 36,646) |
| 1993 | 38,204 | 6,417 | 45,243 | 6,031 | ( 32,795) |
| 1994 | 41,989 | 9,273 | 23,172 | 22,637 | ( 36,536) |

_____

[1] For the 1992 and 1993 years this figure represents only
the amounts claimed as cost of goods sold.  No expenses were
claimed on the Schedules C attached to these returns.  The figure
for the 1994 tax year comprises $20,527 for cost of goods sold
and $2,110 in expenses.

Petitioner testified that from time to time over a number of
years he attempted to dispose of his defective tape inventory.
He testified that "so what I went through this whole period of
time was trying to get somebody who would take some of it, any of
it or all of it".  But since the record is rather muddied, it is
not clear that petitioner actually ever sold any of the tape.

Petitioner does not attempt to explain how Schedule C
returns and allowances could exceed Schedule C gross receipts,
particularly in each year over a 4-year period as reflected on
the above table.  Throughout 1993 and for 5 years before that,
petitioner was employed by the State of California as a payroll

tax auditor. We are convinced that in order to offset his State of California wage income, petitioner merely manipulated fictitious figures on his Federal income tax returns, including 1993, to make it appear that he was operating a Schedule C business that generated losses year after year. Petitioner admitted as much at trial. Accordingly, we sustain respondent's disallowance of petitioner's claimed returns and allowances on Schedule C of his 1993 return in the amount of $45,243.

Petitioner's 1993 Schedule C reflects that petitioner operated a business of filament tape manufacturer and converter as a proprietor. The Schedule C shows gross receipts of $6,417, returns and allowances of $45,243, and cost of goods sold of $6,031. Respondent disallowed the returns and allowances, but made no adjustment to cost of goods sold.

In computing petitioner's total earnings from self-employment, respondent erroneously added the $6,031 cost of goods sold to the gross receipts of $6,417, rather than reducing the latter by the former, thus erroneously arriving at total earnings from self-employment in the amount of $12,448. Based on this figure, respondent incorrectly computed petitioner's self-employment tax liability and the related self-employment tax

deduction.  The correct amounts will be recomputed under Rule 155.

As noted, respondent determined an accuracy-related penalty under section 6662(a) in the amount of $2,226.  Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to items set forth in section 6662(b).  Section 6662(b)(1) provides that section 6662(a) is to apply to any portion of an underpayment attributable to negligence or disregard of rules or regulations. Section 6662(b)(2) applies section 6662(a) to any substantial understatement of income tax.

Section 6662(c) defines negligence to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and defines "disregard" to include any careless, reckless, or intentional disregard of rules or regulations.  Petitioner was an accountant who knew that he was not entitled to reduce his gross receipts by returns and allowances when he had not taken the sales price of the returned items into his income.  Thus, we find and hold that petitioner demonstrated negligence or disregard of rules or regulations.

There is a substantial understatement of income tax if the

amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000.  Sec. 6662(d)(1)(A).

Under section 6662(d)(2), the term "understatement" means the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).  The computation of the correct amount of the section 6662(a) penalty will be made under Rule 155.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.